**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DAVID CHAVEZ, *individually and on behalf of all others similarly situated*,

           Plaintiff,

   v.

CHURCH & DWIGHT CO., INC.,

           Defendant.

Case No. 1:17-cv-01948

Hon. John J. Tharp, Jr.

**FIRST AMENDED CLASS ACTION COMPLAINT**

JURY TRIAL DEMANDED

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff, David Chavez, individually and on behalf of all other persons similarly situated, by his undersigned attorneys, for his First Amended Class Action Complaint against Defendant, Church & Dwight Co., Inc., ("Church & Dwight"), alleges the following based upon personal knowledge as to himself and his own action, and, as to all other matters, alleges, upon information and belief and investigation of his counsel, as follows:

### NATURE OF THE ACTION

1.       This is a consumer class action brought individually by Plaintiff and on behalf of all persons in the below-defined proposed Classes, all of whom purchased the dietary supplement Vitafusion B Complex Energy, Adult Vitamins, Gummies, natural strawberry flavor (hereinafter "Vitafusion").

2.       Unbeknownst to Plaintiff and members of the Classes, and contrary to the express representations made on its label, Vitafusion contains an excessive and potentially dangerous amount of the synthetic form of folate which, if known to Plaintiff and members of the Classes, would have caused Plaintiff and members of the Classes not to purchase or use Vitafusion.

3.       Vitamins, including folate, play a crucial role in health.

1

4. Understanding the important role that folate plays in health, the Office of Dietary Supplements for the National Institutes of Health recognizes a recommended daily allowance level for folate of 400 mcg.

5. Similarly, because of the important role that folate plays in health, several foods are fortified with folic acid, the synthetic form of folate.

6. In recent years, consumers wishing to ensure that they obtain the proper amount of vitamins, such as folate, have increasingly turned to nutritional supplements.

7. Thus, one of the fastest growing industries in the world is the nutritional supplement group, more broadly known as Vitamins, Minerals and Supplements, or VMS. Producing about $32 billion in revenue for just nutritional supplements alone in 2012, it is projected to double that by topping $60 billion in 2021 according to the Nutritional Business Journal.[1]

8. Within this sphere, Vitafusion occupies a significant market share, with sales in all fifty states totaling hundreds of millions of dollars and distribution through numerous large retailers.

9. Defendant warranted, advertised, and sold Vitafusion throughout the United States, including in the State of Illinois and in this District as containing 400 mcg of folate, the recommended daily allowance recognized by the National Institutes of Health.

10. However, just as there is a recommended daily allowance for folate, the National Institutes of Health also recognizes an Upper Tolerable Intake Limit for the synthetic form of folate that is used in supplements and fortified foods. An Upper Tolerable Intake Limit is a maximum daily intake unlikely to cause adverse health effects. The Upper Tolerable Intake Limit for folic

---

[1] *Nutritional Supplements Flexing Muscles As Growth Industry*, FORBES, https://www.forbes.com/sites/davidlariviere/2013/04/18/nutritional-supplements-flexing-their-muscles-s-growth-industry/#36661fbe8845 (last visited on March 13, 2017).

acid, synthetic folate, from dietary supplements and fortified foods for an adult is 1000 mcg. Exceeding the Upper Tolerable Intake Limit for folate can lead to a greater risk of developing cancer and exacerbating anemia as well as causing an onset and exacerbation of the various symptoms and conditions associated with vitamin B12 deficiency.

11.     Despite its extensive sales, and despite labeling Vitafusion as containing 400 mcg of folate per gummy, Defendant does not ensure that Vitafusion actually contains the 400 mcg of folate listed on its label.

12.     Instead, unbeknownst to Plaintiff and Members of the Classes at the time they purchased Vitafusion, Vitafusion actually contains 1232 mcg of synthetic folate (folic acid) per gummy, an amount that exposes consumers of Vitafusion to the risks associated with excess intake of synthetic folate.

13.     This renders Vitafusion, which derives its value from its ability to provide a health promoting amount of vitamins, effectively worthless.  Far from providing the recommended amount of folate as recognized by the National Institutes of Health, Vitafusion instead exposed Plaintiff and Members of the Classes to an unsafe level of folate.

14.     After Plaintiff's counsel obtained the testing results, Plaintiff promptly notified Defendant that Vitafusion was mislabeled.

15.     Yet, despite having knowledge that Vitafusion's labeling is deceptive, misleading, and constitutes a fraud on consumers, Defendant continues to advertise, distribute, label, manufacture, market, and sell Vitafusion in a false, misleading, unfair, and/or deceptive manner, still claiming, falsely that Vitafusion contains a safe amount of synthetic folate, not the potentially dangerous amount it actually contains.

16.    As a result of Defendant's unlawful and deceptive conduct, Plaintiff and Members of the Classes have been and continue to be harmed, both by purchasing a product under false pretenses and by ingesting a product that increased their risk to various diseases.

17.    Plaintiff and the Classes thus bring claims for consumer fraud, breach of warranty, common law fraud and unjust enrichment and seek damages, injunctive and declaratory relief, interest, costs, and reasonable attorneys' fees.

## PARTIES

18.    Plaintiff, David Chavez, is a citizen of the State of Illinois residing in the City of Northlake, and is a member of the Class defined herein.  He purchased the Vitafusion for his own use during the four years preceding the filing of this Complaint and most recently in February of 2017.  Mr. Chavez and members of the Classes suffered an injury in fact caused by the false, fraudulent, unfair, deceptive, and misleading practices of Defendant set forth in this Complaint. Plaintiff David Chavez and members of the Classes would not have purchased the Vitafusion had the labeled amount of folate been accurate.

19.    Defendant, Church & Dwight, is a Delaware corporation with its principal place of business in Ewing, New Jersey.

## JURISDICTION AND VENUE

20.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter referred to as "CAFA") codified as 28 U.S.C. § 1332(d)(2) because the claims of the proposed Class Members exceed $5,000,000 and because Defendant is a citizen of a different state than most Class Members.

21.     The Court has personal jurisdiction over Defendant because Defendant regularly conducts business in this District and/or under the stream of commerce doctrine by causing products to be sold in this District, including the Vitafusion purchased by Plaintiff.

22.     Venue is proper because a substantial portion of the events complained of occurred in this District and this Court has jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

### *The Risks and Benefits of Vitamin Folate*

23.     There are eight B vitamins generally known as thiamin (B-1), riboflavin (B-2), niacin (B-3), pantothenic acid (b-5), pyridoxine (B-6), biotin (B-7), folate (folic acid, B-9), and cobalamin (b-12).  Like most vitamins, B vitamins are essential – every person needs them, but the body cannot make them; rather, they must be obtained from a person's diet and/or supplements.

24.     Each vitamin B is associated with a variety of functions, many of which relate to turning food into energy and other needed substances.

25.     In particular, vitamin B-9 (folate) is crucial for proper brain function and plays an important role in physical and mental health.[2]

26.     For example, studies have shown that combinations of B-6, B-12, and folate have been able to reduce homocysteine levels – a risk factor for cardiovascular disease.[3]

27.     Moreover, folate aids in the production of DNA and RNA, the body's genetic material, and is especially important when cells and tissues are growing rapidly, such as in infancy, adolescence, and pregnancy.[4]  Folate also works closely with vitamin B-12 to help make red blood cells and help iron work properly in the body.[5]

---

[2] *See* http://umm.edu/health/medical/altmed/supplement/vitamin-b9-folic-acid.
[3] *Id.*
[4] *Id*.
[5] *Id*.

28.     In fact, studies have shown that proper dosages of folate can help prevent birth defects, heart disease, age-related hearing loss, and even depression.[6]

29.     However, while B vitamins are generally health promoting if taken in the right dosage, intake of too much vitamin B can present problems for a person, and even be dangerous in some circumstances.[7]

30.     Specifically, there also is a risk of too much consumption of folate. Studies have shown that over consumption of folate could increase the risk of certain precancerous tumors becoming malignant and exacerbate anemia as well as cause an onset of the symptoms associated with vitamin B12 deficiency.[8]

31.     Additionally, it is possible that high levels of folic acid could cause abdominal cramps, diarrhea, rash, sleep disorders, irritability, confusion, nausea, stomach upset, behavior changes, skin reactions, gas and excitability.[9] And "doses of 800-1200 mcg might increase the risk of heart attack in people who have heart problems."[10] Moreover, symptoms of excessive folic acid could include "psychotic behavior, numbness or tingling, mouth pain, weakness, trouble concentrating, confusion, fatigue and even seizures."[11]

32.     For this reason, high doses of vitamin B supplements (including folate) must be taken with caution. The Office of Dietary Supplements for the National Institutes of Health, an agency of the U.S. Department of Health & Human Services, recognizes the recommended daily

---

[6] *Id.*
[7] https://ods.od.nih.gov/factsheets/VitaminB6-Consumer/.
[8] https://ods.od.nih.gov/factsheets/Folate-Consumer/ and https://ods.od.nih.gov/factsheets/Folate-HealthProfessional/.
[9] http://www.webmd.com/vitamins-supplements/ingredientmono-1017-folic%20acid.aspx?activeingredientid=1017&
[10] Id.
[11] http://www.livestrong.com/article/408171-signs-symptoms-of-having-too-much-folic-acid-in-your-body/

allowance for folate and the Upper Tolerable Intake Limit – the highest level of nutrient intake that is likely to pose no risk of adverse health effects – for the synthetic folate found in supplements and fortified foods, as set by the National Academy of Sciences.[12]

33.     With respect to folate, the recommended daily allowance that a person should consume is 400 mcg of folate and the Upper Tolerable Intake Limit for folate in supplement or additive form is set at 1,000 mcg.[13]  As set forth above, studies have shown that consuming more than the Upper Tolerable Intake Limit may cause adverse health effects such as increasing the risk of certain precancerous tumors becoming malignant.

34.     Accordingly, it is important for members of the public not to consume too much folate.

35.     Likewise, it is essential for supplement manufacturers to accurately label their products, so that consumers reading a product's label can ensure that they ingest the appropriate amount of that vitamin supplement.

### *Church & Dwight Falsely Labels Vitafusion*

36.     Church & Dwight is a publicly traded company based in New Jersey that is a major manufacturer of household products, including vitamin supplements.

37.     The sale of vitamin supplements is a vital part of the business operations of Defendant.  According to a media release issued by Defendant in 2013:

> The gummy vitamin business is strategically important to Church & Dwight and is expected to be a significant contributor to the future growth of sales, earnings, and cash flows…Our gummy vitamin sales are growing at a 20% rate to approximately $300 million in annual net sales in 2013. We expect double-digit gummy vitamin sales growth in 2014. We believe the future prospects of the gummy vitamin category are strong as more adults switch from traditional vitamin pills to gummy vitamins. This investment will expand our production capacity by 75% and will help to drive our long-term goals for revenue and earnings growth.

---

[12] *Id.*
[13] *Id.*

The Company expects to invest approximately $55 million in capital expenditures to construct the new production line, which is expected to employ approximately 180 people. For 2014, total capital expenditures are projected to be $85 million, of which approximately $40 million relates to the vitamin investment. As announced today by the Commonwealth of Pennsylvania, the Company has received an economic development assistance package from the Commonwealth in connection with the investment, consisting of grants, tax credits, and training funds.

*See* Exhibit A attached hereto.

38.     In order to increase sales, Defendant boasts on its website[14] that it develops, manufactures, and delivers "high quality dietary supplements in the gummy vitamin industry," and "place[s] the utmost importance on nutritional accuracy and high product quality:"

## Quality and Manufacturing

For close to 16 years we have developed, manufactured and delivered high quality dietary supplements in the gummy vitamin industry. We combine extensive research with an understanding of the marketplace, to offer innovative, healthful and unique products.

*Comprehensive Lab Testing*

We place the utmost importance on nutritional accuracy and high product quality. In order to achieve reliable results, we require sophisticated laboratory testing, both in-house and through certified contract laboratories.

Some of the testing requirements include:

- Microbiology Testing
- Potency Testing
- Heavy Metals Testing

*Good Manufacturing Practices Certified*

Church & Dwight's facility is GMP-certified, ensuring quality standards through two independent verifications of processes, procedures and documentation.

We have a long history of quality manufacturing, with an unwavering commitment to supply our customers with innovative vitamin supplement products that provide uncompromising quality.

---

[14] *See* http://www.gummyvites.com/en/vitafusion/About-Us.

39.     Defendant directs and controls all significant aspects of the sale of its well-known vitamin products, including the manufacturing, marketing, packaging, distribution, and pricing. The products are sold at thousands of stores throughout the United States and on consumer retail websites.

40.     One of Defendant's vitamin products is Vitafusion.  According to Defendant[15], Vitafusion helps support energy metabolism with an excellent source of five B vitamins and the synthetic folic acid amount per serving compares to the naturally occurring folate in "2 avocados":



41.     According to the Nutrition Facts listed on a bottle of Vitafusion, each gummy provides 400 mcg of folate:

[15] *See* http://www.gummyvites.com/en/vitafusion/Products/vitafusion-B-Complex.

| Nutrition Facts | | |
| --- | --- | --- |
| Serving Size : | 1 Gummy Vitamin | |
| Serving per Container : | | 70 |
| **Amount Per Serving** | | % Daily value |
| Total Carbohydrate | 2g | <1 |
| Sugars | 1g | |
| Inositol | 7mg | |
| Vitamin C | 15mg | 25 |
| Niacin (B3) | 20mg | 100 |
| Vitamin B6 | 2mg | 100 |
| Folate,Folic Acid,Folacin | 400mcg | 100 |
| Vitamin B12 | 30mcg | 500 |
| Biotin | 75mcg | 25 |
| Pantothenic acid | 10mg | 100 |

42.     400 mcg of folate is 100% of the recommended daily allowance of folate.  Thus, consumers taking Vitafusion should be able to be confident that they are obtaining the full recommended daily allowance of folate.

43.     400 mcg of folate is also well below the Upper Tolerable Intake Limit of 1000 mcg of synthetic folate.  Thus, consumers purchasing Vitafusion should be confident that they will not exceed the Upper Tolerable Intake Limit for folate by taking Vitafusion.

44.     Church & Dwight directs the representation about the amount of folate in Vitafusion to consumers, like Plaintiff and the members of the Classes, and Church & Dwight intends that Plaintiff and members of the Classes read and rely on its representations.

45.     However, contrary to the representations made on each bottle of Vitafusion, Vitafusion actually contains more than the Upper Tolerable Intake Limit for folate, exposing Plaintiff and Members of the Classes to harm and providing Plaintiff and Members of the Classes with a product of no value to them and perhaps even a negative value.

46.     Plaintiff's counsel had Vitafusion tested and that test showed that the listed amount of folate for Vitafusion was nowhere near accurate.  (*See* lab report, attached as Ex. B).  Instead, test results showed that each gummy contained 1232.2 mcg of synthetic folate, an amount above the Upper Tolerable Intake Limit.  *Id*.

47.     Defendant, which has the resources to conduct its own testing, had no reasonable basis to believe that the listed amount of folate for Vitafusion was accurate and/or knew or should have known that the listed amount of folate for Vitafusion was not accurate and that its labeling, advertising and/or marketing was false and misleading.

48.     On March 10, 2017, after Plaintiff's counsel obtained the testing results, Plaintiff promptly notified Defendant that Vitafusion was mislabeled.

49.     Nevertheless, Defendant continues to falsely and misleadingly market, advertise, package and/or sell Vitafusion to the general public as a "high quality dietary supplement" in which it "place[d] the utmost importance on nutritional accuracy."  The only conceivable purpose for falsely and deceptively making these claims about Vitafusion is to stimulate sales and enhance Defendant's profits based on the sale of a product that is deemed by the National Institutes of Health to deliver an unsafe level of folate.

50.     Indeed, Defendant surely understands that no reasonable consumer would purchase Vitafusion if it were accurately labeled as containing a dose above the Upper Tolerable Intake Limit.

51.     Consumers are particularly vulnerable to these kinds of false and deceptive labeling and marketing practices.  Most consumers are unable to verify that products such as Defendant's Vitafusion are accurately labeled.  As set forth above, accurate labeling of a vitamin B supplement is essential.

52.     Because of Defendant's deceptive advertising practices, consumers were and continue to be fraudulently induced to purchase Vitafusion.

53.     The difference between the Vitafusion promised and the Vitafusion sold is significant.  The exorbitant amount of excess folate provided in the dietary supplement exposes consumers to needless and completely avoidable risks.

54.     This makes Vitafusion worthless, since the primary reason consumers take vitamin supplements is to ensure that they are receiving the amount of vitamins recommended to promote good health and not an amount of vitamins that is above the tolerable limit for their bodies' health.

### *Church & Dwight's Mislabeling*
### *Violates Federal Labeling Requirements*

55.     Defendant's misleading statements to consumers violate 21 U.S.C. § 343, which provides that dietary supplements are misbranded when they contain false statements on their labels.

56.     Since each serving of Vitafusion contains 1232 mcg of folate, Vitafusion's label includes the false statement that each serving includes 400 mcg of folate.

57.     Accordingly, Church & Dwight's mislabeling of Vitafusion, which forms the basis of this lawsuit, constitutes a violation of 21 U.S.C. § 343.

### *Plaintiff Relies Upon the Vitafusion Label*
### *to Purchase and Consume Vitafusion*

58.     Plaintiff was himself a victim of Defendant's mislabeling of Vitafusion.

59.     On several occasions over the last four years, and most recently in February of 2017, Plaintiff purchased Vitafusion at his local Walmart.

60.     Plaintiff purchased Vitafusion believing that it would provide him with the amount of B vitamins stated on the bottle.

61. Plaintiff would not have purchased Vitafusion had he known that it contained a level of folate that was above the Upper Tolerable Intake Limit.

62. Likewise, after purchasing Vitafusion, Plaintiff consumed it, believing that doing so would benefit his health.

63. Plaintiff would not have consumed Vitafusion had he known that Vitafusion contained a level of folate that was above the Upper Tolerable Intake Limit.

64. Plaintiff is in the same Class as all other consumers who purchased Defendant's Vitafusion during the relevant time period. Plaintiff and the Class Members were in fact misled by Defendant's misrepresentations in respect to the Vitafusion. Plaintiff and Class Members would have purchased other vitamin B dietary supplements, if any at all, if they had not been deceived by the misleading and deceptive labeling of the product by Defendant.

## CLASS ACTION ALLEGATIONS

65. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully set forth herein.

66. Plaintiff brings this action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action and seeks certification of the following Classes:

**National Class:** All persons within the United States who purchased and consumed Vitafusion from the beginning of any applicable limitations period through the date of class certification (the "National Class" or the "Class").

**Consumer Fraud Multi-State Class:** All persons in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Washington and Wisconsin who purchased and consumed

Vitafusion from the beginning of any applicable limitations period through the date of class certification (the "Consumer Fraud Multi-State Class").[16]

**Illinois Sub-Class:** All persons in Illinois who purchased and consumed Vitafusion from the beginning of any applicable limitations period through the date of class certification (the "Illinois Sub-Class").

67.     Excluded from the Classes are the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents, employees and their legal representatives, any Judge to whom this action is assigned and any member of such Judge's staff and immediate family, and Plaintiff's counsel, their staff members, and their immediate family.

68.     Plaintiff reserves the right to amend the Class definitions or add a Class if further information and discovery indicate that the Class definitions should be narrowed, expanded, or otherwise modified.

69.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

70.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).**  The members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Classes number in the thousands to hundreds of thousands. The number of members of the Classes is presently unknown to Plaintiff, but may be ascertained from Defendant's

---

[16] The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, *et seq.*, prohibits both unfair and deceptive business acts and practices on the part of entities conducting business with consumers within the State of Illinois.  The States in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case as alleged herein: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201 *et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A *et seq.*); Michigan (Mich. Comp. Laws § 445.901 *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. § 407.010 *et seq.*); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq.*); New York (N.Y. Gen. Bus. Law § 349, *et seq.*); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Washington (Wash. Rev. Code § 19.86010, *et seq.*) and Wisconsin (WIS.  STAT. § 100.18, *et seq.*).

books and records.  Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

71. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual members of the Classes.  Such common questions of law or fact include, but are not limited to, the following:

  a.  Whether Vitafusion contains 400 mcg of folate, as claimed on its label;

  b.  How much folate was actually contained in each serving of Vitafusion;

  c.  Whether the Upper Tolerable Intake Limit for folate from supplements and fortified foods is 1000 mcg;

  d.  Whether Defendant had a reasonable basis for claiming that Vitafusion contained 400 mcg of folate per serving;

  e.  Whether the marketing, advertising, packaging, labeling, and other promotional materials for Vitafusion are deceptive;

  e.  Whether Defendant's actions violate the state consumer fraud statutes invoked below;

  f.  Whether Defendant's actions constitute common law fraud;

  g.  Whether Plaintiff and the members of the Classes were damaged by Defendant's conduct;

  h.  Whether Defendant was unjustly enriched at the expense of Plaintiff and Class Members;

  i.  Whether Defendant breached express warranties to Plaintiff and Class Members;

  j.  Whether Defendant breached implied warranties to Plaintiff and Class Members; and

  k.  Whether Plaintiff and Class Members are entitled to injunctive relief.

72. Defendant engaged in a common course of conduct giving rise to the legal rights Plaintiff seeks to enforce, on behalf of himself and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. Individual questions, if any, pale in comparison, in both quality and quantity, to the numerous common questions that dominate this action.

73. **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were comparably injured through Defendant's uniform misconduct described above. Further, there are no defenses available to Defendant that are unique to Plaintiff or to any particular Members of the Classes.

74. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other Members of the Classes he seeks to represent; he has retained counsel competent and experienced in complex class action litigation; and he will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and the undersigned counsel.

75. **Insufficiency of Separate Actions – Federal Rule of Civil Procedure 23(b)(1).** Absent a representative class action, Members of the Classes would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible

standards of conduct for Defendant. The proposed Classes thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1).

76.     **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the members of the Classes as a whole. In particular, Plaintiff seeks to certify a Class to enjoin Defendant from selling or otherwise distributing Vitafusion until such time that Defendant can demonstrate to the Court's satisfaction that each dose of Vitafusion actually contains 400 mcg of folate.

77.     **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for Members of the Classes to individually seek redress for Defendant's wrongful conduct.  Even if Members of the Classes could afford individual litigation, the court system could not.  Individualized litigation would create a potential for inconsistent or contradictory judgments, and increase the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

# CAUSES OF ACTION

## Count I

### Violation of the State Consumer Fraud Acts
### (On Behalf of the Consumer Fraud Multi-State Class)

78.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully set forth herein.

79.     The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

80.     Plaintiff and the other Members of the Consumer Fraud Multi-State Class have standing to pursue a cause of action for violation of the Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Class because Plaintiff and Members of the Consumer Fraud Multi-State Class have suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

81.     Defendant engaged in unfair and/or deceptive conduct, including, but not limited to the following:

    a.  Representing on its label for Vitafusion that Vitafusion contains 400 mcg of folate, with no reasonable basis to do so and when, in fact, Vitafusion contains 1232 mcg of folate;

    b.  Representing on its website that it delivers "high quality dietary supplements in the gummy vitamin industry" when, in fact, Vitafusion is not a high quality dietary supplement;

    c.  Representing on its website that it "place[s] the utmost importance on nutritional accuracy and high product quality," when Defendant does not place

"the utmost importance on nutritional accuracy," as evidenced by the fact that Vitafusion contains a dangerously high level of folate; and

   d. Allowing consumers to purchase Vitafusion without any disclosure that it contained an unsafe level of folate.

82.    Defendant intended that Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class would rely upon its unfair and deceptive conduct and a reasonable person would in fact be misled by this deceptive conduct described above.

83.    As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other Members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

84.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

   A.    Declaring that this action is a proper class action, certifying the Consumer Fraud Multi-State Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

   B.    Enjoining Defendant from engaging in the unlawful conduct set forth herein;

   C.    Ordering Defendant to pay actual damages to Plaintiff and the other Members of the Class;

   D.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other Members of the Class;

E.     Ordering Defendant to pay statutory damages, as provided by the applicable state consumer protection statutes invoked herein, to Plaintiff and the other Members of the Class;

F.     Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

G.     Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

H.     Ordering such other and further relief as may be just and proper.

### Count II

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act
### (In the Alternative to Count I and on behalf of the Illinois Sub-Class)

85.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

86.     The Illinois Consumer Fraud and Deceptive Business Practices Act (the "ICFA"), 815 ILCS 505/1, *et seq*., prohibits the use of unfair or deceptive business practices in the conduct of trade or commerce.  The ICFA is to be liberally construed to effectuate its purposes.  815 ILCS 505/11a.

87.     Defendant engaged in the following unfair and/or deceptive business practices in the conduct of trade or commerce:

a.     Representing on its label for Vitafusion that Vitafusion contains 400 mcg of folate, with no reasonable basis to do so and when, in fact, Vitafusion contains 1232 mcg of folate;

b.     Representing on its website that it delivers "high quality dietary supplements in the gummy vitamin industry" when, in fact, Vitafusion is not a high quality dietary supplement;

c. Representing on its website that it "place[s] the utmost importance on nutritional accuracy and high product quality," when Defendant does not place "the utmost importance on nutritional accuracy," as evidenced by the fact that Vitafusion contains a dangerously high level of folate; and

d. Allowing consumers to purchase Vitafusion without any disclosure that it contained an unsafe level of folate.

88. Defendant's conduct in marketing, advertising, packaging and/or selling Vitafusion constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendant's trade or commerce.

89. Defendant intended that Plaintiff and each of the Members of the Illinois Sub-Class would rely upon Defendant's deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

90. Defendant knew or should have known that its representations of fact concerning Vitafusion are material and likely to mislead consumers.

91. Defendant's practices, acts, and course of conduct in marketing and selling Vitafusion are likely to mislead a reasonable consumer acting reasonably under the circumstances to his or her detriment. Like Plaintiff, Members of the Illinois Sub-Class would not have purchased Vitafusion had it been accurately marketed, advertised, packaged, and/or sold.

92. Plaintiff and Members of the Illinois Sub-Class have been directly and proximately damaged by Defendant's actions.

93. As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiff and each of the other members of the Illinois Sub-Class have sustained damages in an amount to be proven at trial.

94.     In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Illinois Sub-Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

A.      Declaring that this action is a proper class action, certifying the Illinois Sub-Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B.      Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.      Ordering Defendant to pay actual damages to Plaintiff and the other Members of the Class;

D.      Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other Members of the Class;

E.      Ordering Defendant to pay reasonable attorneys' fees and litigation costs to Plaintiff and the other Members of the Class;

F.      Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

G.      Ordering such other and further relief as may be just and proper.

## Count III

## Common Law Fraud
### (On Behalf of the National Class and the Illinois Sub-Class)

95.     Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

96.     Plaintiff brings this claim against Defendant on behalf of himself, the National Class, and the Illinois Subclass (for purposes of this Count, the "Classes").

97.     Defendant made false statements and omissions of material facts, including:

a. Representing on its label for Vitafusion that Vitafusion contains 400 mcg of folate, with no reasonable basis to do so and when, in fact, Vitafusion contains 1232 mcg of folate;

b. Representing on its website that it delivers "high quality dietary supplements in the gummy vitamin industry" when, in fact, Vitafusion is not a high quality dietary supplement;

c. Representing on its website that it "place[s] the utmost importance on nutritional accuracy and high product quality," when Defendant does not place "the utmost importance on nutritional accuracy," as evidenced by the fact that Vitafusion contains a dangerously high level of folate; and

d. Allowing consumers to purchase Vitafusion without any disclosure that it contained an unsafe level of folate.

98.     Defendant's false statements and omissions of material facts were made to Plaintiff and the Members of the Classes at least each time that Plaintiff and the Members of the Classes purchased Vitafusion.  Defendant continues to make these false statements and omissions of material facts to Plaintiff, which he most recently relied on in February of 2017.

99.     Defendant knew or should have known that these statements were false and that the omissions were material.  Alternatively, Defendant recklessly made these false statements and/or omissions without having any reasonable basis to believe they were true.

100.    Defendant intended that its false statements and omissions of material facts would induce Plaintiff and each of the Members of the Classes to purchase Vitafusion.

101.    Plaintiff and the Members of the Classes relied on the false statements and omissions of material facts of Defendant that Vitafusion contained 400 mcg of folate, a safe level of folate, and not the 1232 mcg of synthetic folate actually contained in each serving.

102.    Plaintiff and Members of the Classes would not have purchased Vitafusion had it been accurately marketed, advertised, packaged, and/or sold.

103.    Plaintiff and Members of the Classes have been directly and proximately damaged by Defendant's false statements and omissions of material facts.

104.    As a result of Defendant's false statements and omissions of material facts, Plaintiff and each of the other Members of the Classes have sustained damages in an amount to be proven at trial.

105.    In addition, Defendant's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Classes proposed in this Count, respectfully requests that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.    Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.    Ordering Defendant to pay actual damages to Plaintiff and the other Members of the Classes;

D.    Ordering Defendant to pay punitive damages, as allowable by law, to Plaintiff and the other Members of the Classes;

E.    Ordering Defendant to pay reasonable attorneys' fees and litigation costs, as allowable by law, to Plaintiff and the other Members of the Classes;

F.      Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

G.      Ordering such other and further relief as may be just and proper.

## Count IV

### Breach of Express Warranties
### (On behalf of the National Class and the Illinois Sub-Class)

106.    Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

107.    Plaintiff brings this claim against Defendant on behalf of himself, the National Class, and the Illinois Subclass (for purposes of this Count, the "Classes").

108.    Defendant made express warranties and representations regarding Vitafusion when it represented on its label for Vitafusion that Vitafusion contains 400 mcg of folate.

109.    This labeling, marketing, and advertising, which existed on the Vitafusion labels when they left Defendant's control and were made directly to consumers and end purchasers of Vitafusion, constitute express warranties and became part of the basis of the bargain between the parties and created a collective "express warranty" that Vitafusion would conform to Defendant's affirmations and promises.

110.    Defendant breached express warranties about Vitafusion and its qualities because Defendant's statements about Vitafusion were false and the product does not conform to Defendant's affirmations and promises described above.

111.    Plaintiff and the Members of the Classes would not have purchased Vitafusion had they known that it contained an unsafe or unhealthy amount of folate.

112.    Defendant's conduct described in this Complaint constitutes a breach of express warranties under UCC § 2-313, as adopted by the following state statutes:

Ala. Code § 7-2-313, et seq.; Alaska Stat. § 45.02.313, et seq.; Ariz. Rev. Stat. § 47-2313, et seq.; Ark. Code § 4-2-313, et seq.; Cal. Com. Code § 2313, et seq.; Colo. Rev. Stat. § 4-2-313, et seq.; Conn. Gen. Stat. § 42a-2-313, et seq.; 6 Del. C. § 2-313, et seq.; D.C. Code § 28:2-313, et seq.; Fla. Code § 672.313, et seq.; O.C.G.A. § 11-2-313, et seq.; Haw. Rev. Stat. § 490:2-313, et seq.; Idaho Code § 28-2-313, et seq.; 810 Ill. Comp. Stat. 5/2-313, et seq.; Ind. Code § 26-1-2-313, et seq.; Iowa Code § 554.2313, et seq.; Kan. Stat. § 84-2-313, et seq.; Ky. Rev. Stat. § 355.2-313, et seq.; La. Rev. Stat § 9:2800.53(6) , et seq.; 11 M.R.S.A. § 2-313, et seq.; Md. Code Ann., Com. Law § 2-313, et seq.; Mass. Code 106, § 2-313, et seq.; Mich. Comp. Laws 440.2313, et seq.; Minn. Stat. § 336.2-313, et seq.; Miss. Code § 75-2-313, et seq.; Mo. Rev. Stat. § 400.2-313, et seq.; Mont. Code § 30-2-313, et seq.; Neb. U.C.C. § 2-313, et seq.; Nev. Rev. Stat. § 104.2313, et seq.; N.H. Rev. Stat. § 382-A:2-313, et seq.; N.J. Stat. § 12A:2-313, et seq.; N.M. Stat. § 55-2-313, et seq.; N.Y. U.C.C. § 2-313, et seq.; N.C. Gen. Stat. § 25-2-313, et seq.; N.D. Cent. Code § 41-02-30, et seq.; Ohio Rev. Code § 1302.26, et seq.; Okla. Stat. Tit. 12A, § 2-313, et seq.; Or. Rev. Stat. § 72.3130, et seq.; 13 Pa. Cons. Stat. § 2313, et seq.; R.I. Gen. Laws § 6A-2-313, et seq.; S.C. Code § 36-2-313, et seq.; S.D. Codified Laws § 57A-2-313, et seq.; Tenn. Code § 47-2- 313, et seq.; V.T.C.A., Bus. & C. § 2.313, et seq.; Utah Code § 70A-2-313, et seq.; Vt. Stat. Tit. 9A, § 2-313, et seq.; Va. Code § 8.2-313, et seq.; Wash. Rev. Code § 62A.2-313, et seq.; W. Va. Code § 46-2-313, et seq.; Wis. Stat. § 402.313, et seq.; and Wyo. Stat. § 34.1-2-313, et seq.

113.    As a result of Defendant's breach of warranty, Plaintiff and each Member of the Classes has been damaged in an amount equal to the difference in value between Vitafusion containing an excessive amount of folate and Vitafusion containing 400 mcg of folate and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

114.    Plaintiff and the Classes were not required to notify Defendant of its breaches of warranty because the goods sold were for human ingestion.

115.    Nonetheless, on March 10, 2017, prior to filing suit, Plaintiff and Members of the Classes notified Defendant as to its breaches of warranty within days of receiving the test results showing Vitafusion to contain an excess amount of folate and prior to filing this action. (*See* letter, attached as Ex. C).

116.    Defendant never responded to the notice and appears to be continuing to sell mislabeled and potentially dangerous Vitafusion to the consuming public.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Classes proposed in this Count, respectfully requests that the Court enter judgment as follows:

A.   Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.   Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.   Ordering Defendant to pay damages to Plaintiff and the other Members of the Classes, including, but not limited to, damages resulting in the ordinary course of events from the sellers' breach as determined in any manner which is reasonable, and any incidental and consequential damages;

D.   Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

E.   Ordering such other and further relief as may be just and proper.

### Count V

### Breach of Implied Warranties
### (On behalf of the National Class and the Illinois Sub-Class)

117.   Plaintiff incorporates by reference all of the foregoing paragraphs of this Complaint as if fully stated herein.

118.   Plaintiff brings this claim against Defendant on behalf of himself, the National Class, and the Illinois Subclass (for purposes of this Count, the "Classes").

119.   Defendant is in the business of manufacturing, supplying, marketing, advertising, warranting, and selling Vitafusion.  Defendant impliedly warranted to Plaintiff and Members of the Classes that Vitafusion was of a certain quality and was fit for its ordinary and particular purpose, i.e. it was a safe and healthy Vitamin B supplement.

120. Vitafusion was unfit for its ordinary use and was not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label, as warranted by Defendant, because it contained 1232 mcg of synthetic folate. Prior to purchase, Plaintiff and the Members of the Classes could not have really discovered that the product was not fit for its ordinary purpose and did not conform to the quality previously represented.

121. Similarly, Vitafusion was unfit for its particular purpose. At the time Plaintiff and Members of the Classes purchased Vitafusion, Defendant knew or should have known that Plaintiff and the Members of the Classes would purchase and consume the Vitafusion because it is labeled and advertised as a safe and healthy Vitamin B supplement. However, Defendant's product was not suitable for this purpose at the point of sale because it contained 1232 mcg of synthetic folate.

122. Vitafusion was unfit for its ordinary use and was not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label and was unfit for its particular purpose when it left Defendant's control.

123. Plaintiff and Members of the Classes would not have purchased Vitafusion if they knew that it contained excessive amounts of folate.

124. Accordingly, Plaintiff and the Members of the Classes did not receive the benefit of their bargain in purchasing the Vitafusion.

125. Defendant's conduct described in this Complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted by the following state statutes:

Ala. Code § 7-2-314, et seq.; Alaska Stat. § 45.02.314, et seq.; Ariz. Rev. Stat. § 47-2314, et seq.; Ark. Code § 4-2-314, et seq.; Cal. Com. Code § 2314, et seq.; Colo. Rev. Stat. § 4-2-314, et seq.; Conn. Gen. Stat. § 42a-2-314, et seq.; 6 Del. C. § 2-314, et seq.; D.C. Code § 28:2-314, et seq.; Fla. Code § 672.314, et seq.; O.C.G.A. § 11-2-314, et seq.; Haw. Rev. Stat. § 490:2-314, et seq.; Idaho Code § 28-2-314, et seq.; 810 Ill. Comp. Stat. 5/2-314, et seq.; Ind. Code § 26-1-2-314, et seq.; Iowa Code § 554.2314, et seq.; Kan. Stat. § 84-2-

314, et seq.; Ky. Rev. Stat. § 355.2-314, et seq.; La. Rev. Stat § 9:2800.53(6) , et seq.; 11 M.R.S.A. § 2-314, et seq.; Md. Code Ann., Com. Law § 2-314, et seq.; Mass. Code 106, § 2-314, et seq.; Mich. Comp. Laws 440.2314, et seq.; Minn. Stat. § 336.2-314, et seq.; Miss. Code § 75-2-314, et seq.; Mo. Rev. Stat. § 400.2-314, et seq.; Mont. Code § 30-2-314, et seq.; Neb. U.C.C. § 2-314, et seq.; Nev. Rev. Stat. § 104.2314, et seq.; N.H. Rev. Stat. § 382-A:2-314, et seq.; N.J. Stat. § 12A:2-314, et seq.; N.M. Stat. § 55-2-314, et seq.; N.Y. U.C.C. § 2-314, et seq.; N.C. Gen. Stat. § 25-2-314, et seq.; N.D. Cent. Code § 41-02-30, et seq.; Ohio Rev. Code § 1302.26, et seq.; Okla. Stat. Tit. 12A, § 2-314, et seq.; Or. Rev. Stat. § 72.3130, et seq.; 13 Pa. Cons. Stat. § 2314, et seq.; R.I. Gen. Laws § 6A-2-314, et seq.; S.C. Code § 36-2-313, et seq.; S.D. Codified Laws § 57A-2-313, et seq.; Tenn. Code § 47-2- 314, et seq.; V.T.C.A., Bus. & C. § 2.314, et seq.; Utah Code § 70A-2-314, et seq.; Vt. Stat. Tit. 9A, § 2-314, et seq.; Va. Code § 8.2-314, et seq.; Wash. Rev. Code § 62A.2-314, et seq.; W. Va. Code § 46-2-314, et seq.; Wis. Stat. § 402.314, et seq.; and Wyo. Stat. § 34.1-2-314, et seq.

126.    As a result of Defendant's breach of warranty, Plaintiff and each Member of the Classes has been damaged in an amount equal to the difference in value between Vitafusion containing an excessive amount of folate and Vitafusion containing 400 mcg of folate and/or in an amount to be determined at trial and any consequential damages resulting from their purchases.

127.    Plaintiff and the Classes were not required to notify Defendant of its breaches of warranty because the goods sold were for human ingestion.

128.    Nonetheless, on March 10, 2017, prior to filing suit, Plaintiff and Members of the Classes notified Defendant as to its breaches of warranty within days of receiving the test results showing Vitafusion to contain an excess amount of folate and prior to filing this action. (*See* letter, attached as Ex. C).

129.    Defendant never responded to the notice and appears to be continuing to sell mislabeled and potentially dangerous Vitafusion to the consuming public.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Classes proposed in this Count, respectfully requests that the Court enter judgment as follows:

A.    Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Classes;

B.    Enjoining Defendant from engaging in the unlawful conduct set forth herein;

C.    Ordering Defendant to pay damages to Plaintiff and the other Members of the Classes, including, but not limited to, damages resulting in the ordinary course of events from the sellers' breach as determined in any manner which is reasonable, and any incidental and consequential damages.

D.    Ordering Defendant to pay reasonable attorneys' fees and litigation costs, as allowable by law, to Plaintiff and the other Members of the Classes;

E.    Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

F.    Ordering such other and further relief as may be just and proper.


**Count VI**

**Unjust Enrichment
(On Behalf of the Illinois Sub-Class
and in the Alternative to Counts IV and V)**

130.    Plaintiff incorporates by reference paragraphs 1 through 77 of this Complaint as if fully stated herein.

131.    Plaintiff brings this claim against Defendant on behalf of himself and the Illinois Sub-Class.

132.    Plaintiff and the other Members of the Illinois Sub-Class conferred benefits on Defendant by purchasing Vitafusion.

133.    Defendant received the benefits to the detriment of Plaintiff and the other Members of the Illinois Sub-Class because Plaintiff and the other Members of the Illinois Sub-Class purchased a mislabeled product that is not what they bargained for and that would unnecessarily put their health in jeopardy.

134. Defendant has been unjustly enriched in retaining the revenues derived from the purchases of Vitafusion by Plaintiff and the other Members of the Illinois Sub-Class. Retention of those monies under these circumstances is unjust and inequitable because Defendant's labeling of Vitafusion was misleading to consumers, which caused injuries to Plaintiff and the other Members of the Illinois Sub-Class, because they would have not purchased the product had they known the true facts.

135. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and the other Members of the Illinois Sub-Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the other Members of the Illinois Sub-Class for its unjust enrichment, as ordered by the Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other Members of the Illinois Sub-Class proposed in this Count, respectfully requests that the Court enter judgment as follows:

A. Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as Class Representative, and appointing the undersigned counsel as Class Counsel for the Class;

B. Ordering Defendant to pay restitution to Plaintiff and the other Members of the Class;

C. Ordering Defendant to pay both pre- and post-judgment interest, as allowable by law, on any amounts awarded; and

D. Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

Dated: March 29, 2017     Respectfully submitted,

           DAVID CHAVEZ


           /s/ Gary M. Klinger
           Gary M. Klinger (ARDC# 6303726)
           Ryan F. Sullivan (ARDC# 6314103)
           **KOZONIS LAW, LTD.**
           4849 N. Milwaukee Ave., Ste. 300
           Chicago, Illinois 60630
           Phone: 773.545.9607
           Fax: 773.496.8617
           gklinger@kozonislaw.com
           rsullivan@kozonislaw.com

           -and-

           Daniel R. Johnson (ARDC# 6283164)
           **WASKOWSKI JOHNSON**
           **YOHALEM LLP**
           954 W. Washington Blvd., Suite 720
           Chicago, Illinois 60607
           (312) 278-3153
           djohnson@wjylegal.com

           *Attorneys for the Plaintiff, the Putative*
           *Classes, and Subclass*

## <u>CERTIFICATE OF SERVICE</u>

Gary M. Klinger, an attorney, hereby certifies that he caused a copy of the foregoing **First Amended Class Action Complaint** to be served on all counsel of record by electronically filing the document with the Clerk of Court using the ECF system this 29th day of March, 2017.


/Gary M. Klinger/

_____